U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ROBERT GREENE,<br><br>Plaintiff,<br><br>v.<br><br>AMPCO PRODUCTS, INC.,<br>A foreign corporation,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br>Cause No. 4:14-cv-00167<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Robert Greene ("Plaintiff") hereby files his Original Complaint, as follows:

**I.**

**THE PARTIES**

1.1 Plaintiff is an individual and a citizen of Denton County, Texas.

1.2 Defendant, Ampco Products Co. ("Defendant" or "Company") is a corporation existing under the laws of the State of Florida, registered as a foreign corporation in the State of Texas, has an operating facility in Denton County, Texas, and may be served with process by serving its registered agent, Bryon Inman, 201 Railroad Avenue, Sanger, Texas 76266.

1.3 Whenever in this Complaint it is alleged that the Defendant did any act or thing, Plaintiff means that the Defendant's supervisors, agents, servants, employees or representatives did such an act and/or that at that time such act was done, it was done with the full authorization, condonation or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's respective supervisors, agents, servants, employees, or representatives. Specifically, the acts of the Company described hereafter, were

undertaken by, then authorized managerial representatives of the Defendant, including but not limited to the individuals set out in Paragraph 1.4 below.

1.4 At all relevant times herein, Defendant employed, among others, the following supervisors and management personnel: Mike Pentegrast ("Mike"); Sandra Ulloa (Sandra"); Billy, last name unknown to Plaintiff ("Billy"); Jeff Brock ("Jeff"); Tammy Huckabee ("Tammy"); Tracy, last name unknown to Plaintiff ("Tracy").

1.5 At all relevant times herein, Defendant employed, among others, the following individuals who did not perform supervisory or management functions: Genaro Rodriguez; Michael, last name unknown to Plaintiff ("Michael"); Robert, last name unknown to Plaintiff ("Robert").

**II.**

**JURISDICTION**

2.1 This Court has jurisdiction because the claims brought herein arise under 29 U.S.C. § 621, *et seq.*, 29 U.S.C. 2615, *et seq.*, 29 U.S.C. § 623(d) (2000), and 42 U.S.C. §§ 12101, *et. seq.*

**III.**

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

3.1 Plaintiff timely filed a charges of discrimination against Defendant with the Texas Workforce Commission Civil Rights Division, Equal Employment Opportunity Commission ("EEOC") and received a "Notice of Right to Sue" which was mailed on January 8, 2014, a true and correct copy of which is attached hereto, marked "Exhibit A" and by this reference is made a part hereof. Plaintiff files this complaint within 90 days after receiving the aforesaid Notice.

**IV.**

**FACTUAL BACKGROUND**

4.1 Plaintiff lost his lower left leg in 1980. Having no lower left leg, Plaintiff suffers from a physical impairment that substantially limits one or more of his major life activities, such as walking, standing, and working.

4.2 Early in the year 2012, Plaintiff had surgery that allowed him to obtain a prosthesis to artificially replace his lower left leg. This surgery and prosthesis fitting enabled Plaintiff to walk, stand, and work. Plaintiff was ready to seek gainful employment.

4.3 Plaintiff is "disabled" within the meaning of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12101, *et seq.*, § 12102(2) ("ADA") because Plaintiff (1) has a physical impairment that substantially limits one or more of his major life activities; (2) has a record of such impairment; (3) is, and was, regarded as having such an impairment as the allegations hereafter will demonstrate.

4.4 At all relevant times herein, Plaintiff had the knowledge, skill, and ability to perform the essential functions required of a general maintenance employee with or without reasonable accommodation. For example, Plaintiff could provide the following: general maintenance services as needed or requested; assist in a wide variety of maintenance/repair activities; address immediate maintenance operational/safety concerns; help ensure that tools, materials, machinery and systems are maintained in good working order; perform maintenance activities/assignments for company projects; be available at the job site when maintenance work is needed.

4.5 Plaintiff was hired as a maintenance employee by Defendant on August 7, 2012 and wrongfully discharged on November 30, 2012. At all times, Plaintiff could perform the

essential functions of the job for which he was then hired with or without reasonable accommodation.

4.6 Beginning shortly after August 7, 2012, and persisting thereafter at the workplace during work times and within the hearing of others, Defendant began to harass, humiliate, and provoke Plaintiff because of Plaintiff's disability. For example, while directly referring to Plaintiff's disability, Billy began calling Plaintiff derogatory names, *e.g. "crip"* and/or *"cripple"* humiliating Plaintiff because of Plaintiff's disability and laughing at Plaintiff because of Plaintiff's disability. This course of extreme and outrageous conduct by Billy occurred, and continued to occur, on a regular basis over days and weeks in front of Plaintiff's fellow employees. One such episode occurred in front of an outside technician, when Billy said to Plaintiff "Come on, *crip* – you don't need to be here-the Tech can handle it," or words to that effect.

4.7 At the beginning of these harassing episodes, Plaintiff reported Billy's conduct to Sandra and to Mike, who advised Plaintiff that Billy would be "written up" for these comments. It is Defendant's policy and practice to permit its employees to make such reports without retaliatory consequences. Sandra advised Plaintiff that Defendant would not hold it against Plaintiff for reporting Billy. Plaintiff was relieved, as Plaintiff believed he need not worry about retaliation. Nevertheless, the harassment, provocation, and humiliation of Plaintiff continued.

4.8 Further, during the course of several of these humiliating episodes, Billy would brag and state he was going to get Plaintiff fired. By way of example, in one instance occurring in mid-September, 2012, Billy approached Plaintiff to harass, humiliate, and provoke him. At that time at approximately 6:00 a.m., Billy said to Plaintiff, "You're a f---ing cripple, you don't need to be working here-go home" or words to that effect. Plaintiff then became fearful and did

not know how to respond.  Plaintiff nervously laughed.  Billy then responded,  "Oh, you think this is funny.  I will get you fired.  I will talk with Mike and Jeff when they get in," or words to that effect.

4.9   As Defendant's policy and practice permits, Plaintiff also reported this incident to Sandra and to Mike.  Plaintiff was again informed that Billy would be written up.  Plaintiff was so sick and upset because of Billy's harassment and threats, Plaintiff left work early to seek medical help.  Nevertheless, Defendant's harassment, provocation, and humiliation of Plaintiff continued.

4.10   A few days later, Plaintiff was sitting, working, and then was not wearing his prosthesis.  On occasion, when not needed or when causing discomfort, Plaintiff would remove his prosthesis and work while sitting when assignments permitted.  Billy saw Plaintiff and complained.  Mike then called Plaintiff to Mike's office and told Plaintiff that he needed to call in twenty four hours in advance AND get permission to come to work – if Plaintiff might remove his prosthesis that day.  Plaintiff complied and called in as Mike instructed.  Defendant still denied Plaintiff the opportunity to work.  For example, on one occasion Mike delayed returning Plaintiff's call for two full days before allowing Plaintiff to come to work, which unnecessarily caused Plaintiff to miss work.  Defendant did not want, nor did Defendant permit, Plaintiff to not wear Plaintiff's prosthesis at work. Defendant denied and ignored Plaintiff's requests and otherwise interfered with Plaintiff's prosthesis use. In short, Defendant did not want Plaintiff as an employee because of Plaintiff's disability and made work life difficult for Plaintiff at every turn.

4.11   On about November 7, 2012, Mike told Plaintiff that Plaintiff was "very capable" of doing the required work.  At that time, Mike Also acknowledged that Plaintiff had a problem

with Billy and Tammy. Defendant's harassment provocation and humiliation of Plaintiff did not stop.

4.12 Defendant, however, continued to harass Plaintiff because of Plaintiff's disability. For example, in November, 2012, in an attempt to harass, provoke and humiliate Plaintiff, Billy and Tammy told Plaintiff to stop working on Defendant's "Big Saw" and that they would get someone who "knew what they were doing" to fix it. Plaintiff was capable of the task, so Plaintiff asked Mike about their request. Mike instructed Plaintiff to continue working on the "Big Saw." Plaintiff did so and fixed it.

4.13 Despite the complaints of Plaintiff to Defendant, the harassment, provocation, and humiliation continued. For example, Billy continued to harass Plaintiff by openly and continually calling Plaintiff "crip" and "cripple" and openly announcing that Billy was going to get Plaintiff fired. These continuing efforts of Billy and others were discouraging and hurtful to Plaintiff serving to injuring Plaintiff's self-esteem and making his work life miserable.

4.14 Plaintiff continued to be the target of harassing actions because of Plaintiff's disability. For example, Defendant singled out Plaintiff when Plaintiff's work assignments were arbitrarily changed by Defendant to include tasks normally assigned to regular workers, not a maintenance employee. Defendant also singled out Plaintiff when Defendant set new and unreasonably shorter and stricter time limits for machinery and plant repairs. These changes substantially changed Plaintiff's working conditions because each of the changes caused a new, heavier, and oppressive workload on Plaintiff. Even so, Plaintiff always satisfactorily performed each and every assignment given Plaintiff by Defendant in spite of Defendant's efforts to single out Plaintiff and arbitrarily change his job conditions and requirements and harass Plaintiff in order to force Plaintiff to leave his employment - all because of Plaintiff's disability.

4.15    On or about November 27, 2012, out of the blue, Mike asked Plaintiff if Plaintiff got an attorney and if Plaintiff was going to sue "us?"  Plaintiff answered that he had not and Mike walked away.

4.16    On November 30, 2012, Billy continued to harass Plaintiff because of Plaintiff's disability.  For example, to harass and humiliate Plaintiff, Billy told Plaintiff that Plaintiff should not be working on light fixtures.  Because Defendant failed to respond to redress and stop the harassment, provocation, and humiliation of Plaintiff, Plaintiff had enough.  Defendant's provocations became too much to handle.  He did not know what else to do, so took it upon himself to stop it.  Plaintiff told Billy that he was a "jerk" and Plaintiff was immediately fired.  Contrary to the customary policies and practices, Defendant gave Plaintiff no opportunity for explanation and not given any opportunity to respond.  Except as pertaining to Plaintiff, communications between and among Defendant's other workers and Defendant's supervisors were always casual, sometimes profane, disrespectful and derogatory – yet Defendant tolerated such banter by other workers – not by Plaintiff.

4.17    Plaintiff was the object of humiliation, ridicule, provocation, and harassment by Defendant because of his disability.  Defendant wanted Plaintiff out and Defendant achieved its unlawful objective.

4.18    Even after Defendant fired Plaintiff, Defendant's hostility toward Plaintiff continued.  In early February 2013, Plaintiff was shopping at the local Dollar Store in Sanger, Texas.  Billy drove into the parking lot and mocked and taunted Plaintiff and said "I told you I would get your *** fired."  Plaintiff telephoned Sandra about this incident by leaving a voicemail.  Sandra returned Plaintiff's call acknowledging receipt of the voicemail and advised

Plaintiff that she would call Plaintiff back. Sandra never did, nor did anyone else from the Defendant Company.

4.19 Defendant's hostile and oppressive conduct was severe, continuous and oppressive such that Plaintiff became physically and mentally ill as a direct result of Defendant's conduct, causing Plaintiff to miss work, seek and obtain medical attention.

**V.**

**CAUSES OF ACTION**

**COUNT ONE: AMERICANS WITH DISABILITIES ACT (ADA)**

***(i) Failure to Accommodate:***

5.1 Plaintiff hereby incorporates and, here, sets out again Paragraphs 1.1 through 4.19, *supra*, as if fully set forth herein.

5.2 As alleged above in this Complaint (1) Plaintiff is a disabled person within the meaning of the Americans with Disabilities Act (ADA) because Plaintiff has a physical impairment that substantially limits one or more of his major life activities, because Plaintiff has a record of such an impairment, and because Defendant regarded Plaintiff as having such an impairment; (2) Plaintiff is a qualified individual with a disability because Plaintiff is a person with a disability who with or without reasonable accommodation can, and could perform the essential functions of the employment position that Plaintiff held with Defendant; (3) Plaintiff suffered adverse employment actions by Defendant including not only terminating Plaintiff's employment but also the discriminatory and harassing conduct alleged hereinabove and Defendant's failure to make reasonable accommodation for Plaintiff's disability by interfering with Plaintiff's use of his prosthesis as above alleged.

5.4 Defendant violated the ADA by intentionally discriminating against Plaintiff on the basis of his disability by unlawful harassment, wrongful change of working conditions and failure to accommodate Plaintiff and Plaintiff's disability by allowing Plaintiff to use his prosthesis which Defendant once permitted Plaintiff to use, and terminating Plaintiff's employment all because of Plaintiff's disability.

***(ii) Hostile Work Environment***

5.5 Plaintiff hereby sets out again and incorporates Paragraph Nos. 1.1 through 5.4, *supra*, as if fully set forth herein.

5.6 As hereinabove alleged, Plaintiff, while employed with Defendant, was continually exposed to a hostile work environment based on his disability that included comments and conduct by Defendant which constituted unfavorable and poor treatment by Defendant and which created a less favorable work environment than his co-workers. Despite Plaintiff's complaints regarding such environment, Defendant took no action to stop that hostile work environment.

5.7 The said hostile work environment as hereinabove alleged in this Complaint which was caused and allowed to exist by Defendant as alleged above was sufficiently severe or pervasive to alter the terms, conditions, and/or privileges of Plaintiff's employment with Defendant in violation of the ADA.

***(iii) Retaliation***

5.8 Plaintiff hereby sets out again and incorporates Paragraph Nos. 1.1 through 5.7, *supra*, as if fully set forth herein.

5.9 As hereinabove alleged, Plaintiff reported unlawful discriminatory, retaliatory behavior and the hostile work environment on more than one occasion to Defendant.

Plaintiff's reporting was permitted and encouraged by Defendant's policies and procedures with encouraging, though false, assurances of no retribution by Defendant. Despite Plaintiff's complaints the discriminatory harassing, provocative, and humiliation did not stop. The hostile work environment ensued and remained not only because of Plaintiff's disability but because of Plaintiff's reporting of it to Defendant.

5.10   Defendants unlawfully retaliated against Plaintiff in violation the ADA by altering Plaintiff's terms and conditions of employment, continued harassment of Plaintiff and termination of Plaintiff's employment.

**COUNT TWO: ATTORNEYS' FEES**

5.11   Request is hereby made for all costs and reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiff herein, as the Court deems equitable and just, as provided by the ADA.

## VI.

## JURY DEMAND

6.1   Plaintiff hereby demands a jury trial.

## VII.

## PUNITIVE DAMAGES

7.1   As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against Plaintiff, which damaged his reputation, Plaintiff is entitled to exemplary damages in excess of the minimum jurisdictional limits of this court.

**VIII.**

**DAMAGES FOR MENTAL ANGUISH**

8.1 As a consequence of the foregoing facts and the willful and malicious nature of the wrongs committed against Plaintiff, Plaintiff has suffered and will suffer past, present and future severe mental anguish, for which he pleads to recover at trial. The damages for the said mental anguish exceed the minimum jurisdictional limits of this court.

**IX.**

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendant for the following:

1. Compensatory damages for past and future economic losses and costs;
2. Mental anguish;
3. Loss of enjoyment of life;
4. Punitive damages;
5. Reasonable attorneys' fees;
6. A judicial declaration that Defendant's conduct was unlawful;
7. Costs of court;
8. Prejudgment and postjudgment interest at the highest rate allowed by law; and
9. Such other and further legal and equitable relief to which Plaintiff may show himself justly entitled.

APPROVED as to form and content:

/s/ Robert Greene

Robert Greene, Plaintiff

Respectfully Submitted,

By: /s/ David M. Curtis

David Curtis
State Bar No. 05270930
DAVID M. CURTIS & ASSOCIATES, P.C.
381 Casa Linda Plaza, Suite 103
Dallas, Texas 75218
Telephone: 800.961.4201 ext. 101
Facsimile: 800.532.2501
Email: david@laborassociates.com

**ATTORNEYS FOR PLAINTIFF**